J-A14033-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEWART ENOS, | |
| Appellee | No. 1131 EDA 2016 |

Appeal from the Judgment of Sentence March 22, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008798-2014

BEFORE:  BENDER, P.J.E., BOWES, J., and SHOGAN, J.

CONCURRING MEMORANDUM BY BENDER, P.J.E.:**FILED DECEMBER 08, 2017**

I agree with the Majority that the trial court abused its discretion by entertaining Appellee's untimely suppression motion based solely on the court's desire to avoid a collateral ineffectiveness claim.  I recognize that decision as the holding in this case and, consequently, I view the Majority's analysis of the underlying constitutional claim as dicta, regardless of its merit.  Nevertheless, I write to express my concerns with that analysis.

Here, without a warrant, and lacking any exigency justification, the police enlisted a private citizen, the confidential informant ("CI"), to conduct a surreptitious search within Appellee's vehicle with a video camera.  The Majority tacitly approves of this warrantless search by concluding that Appellant "voluntarily invited" the CI into his car, thereby "relinquishing his reasonable expectation of privacy" and with it, "the protections of the Fourth

Amendment [of the United States Constitution] and Article I, Section 8" of the Pennsylvania Constitution.  Majority Opinion at 14.

If the CI had come to the police, unsolicited, with the very same video recording of Appellee, I would have no complaint with the Majority's analysis.  The Fourth Amendment and Article I, Section 8 are restraints on state action, not the behavior of individual citizens.  Here, however, the CI acted as no more than an extended organ of the state.  The police provided the CI with both the camera to record the illicit transaction and the currency to effectuate it.  It is plainly disingenuous to construe this matter as an interaction between two private parties.

If 'privacy' is to mean anything to us as a society, it must mean that our right to selectively include individuals in our private affairs is not so easily breached by surreptitious ploys.  If we recoil at the notion that a private response to an email purporting to be from our bank vitiates our privacy right to the information in that response, even when that email was sent by an internet scammer, we should also recoil at the notion that the Commonwealth can enter our cars to record our behavior, without a warrant, under the false pretense of doing so under the guise of just another private citizen.

What terrible burden would confront the authorities if they had to seek a warrant to conduct such a search?  What overwhelming hurdle would the courts impose on police if these actions were not condoned?  The answer is so underwhelming.  The police would merely have to obtain a warrant from a

magistrate based on probable cause to conduct this search, as required by our state and federal constitutions – a standard which most likely could have easily been met by means of an affidavit provided by the CI regarding his prior knowledge of Appellee's drug dealing.

The Majority's analysis reflects no such balancing of interests between the legitimate police power and an individual's right to privacy. The Majority does rightfully recognize the sanctity of the privacy one reasonably expects in one's own home, as well as the relatively diminished expectation of privacy one can expect in their own vehicle. However, from that point on, I find the Majority's analysis unconvincing that a diminished expectation of privacy in a vehicle effectively constitutes *no expectation* of privacy under the facts of this case.

However, the Majority's analysis, I concede, is not without precedent. The Majority relies, understandably, on **Commonwealth v. Blystone**, 549 A.2d 81 (Pa. 1988) (holding no constitutional violation when a suspect's conversations with an informant were intercepted with the consent of the informant and without a warrant), and **Blystone** itself was firmly grounded on decisions by the United States Supreme Court, including, among other cases, **Lopez v. U.S.**, 373 U.S. 427 (1963) (holding a government agent's secretive recording of a conversation with defendant in his office was not violative of the Fourth Amendment, because the agent was voluntarily permitted into the office with the defendant's consent).

Nevertheless, I stand with the late Justice Brennan who, confronted with the **Lopez** Majority's reasoning, dissented, in pertinent part, as follows:

The other half of the Government's argument is that Lopez surrendered his right of privacy when he communicated his 'secret thoughts' to Agent Davis. The assumption, manifestly untenable, is that the Fourth Amendment is only designed to protect secrecy. If a person commits his secret thoughts to paper, that is no license for the police to seize the paper; if a person communicates his secret thoughts verbally to another, that is no license for the police to record the words. The right of privacy would mean little if it were limited to a person's solitary thoughts, and so fostered secretiveness. It must embrace a concept of the liberty of one's communications, and historically it has. 'The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others … and even if he has chosen to give them expression, he generally retains the power *to fix the limits of the publicity which shall be given them*.' Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, 198 (1890). (Emphasis supplied.)

…

It is no answer to say that there is no social interest in encouraging Lopez to offer bribes to federal agents. Neither is there a social interest in allowing a murderer to conceal the murder weapon in his home. But there is a right of liberty of communications as of possessions, and the right can only be secure if its limitations are defined within a framework of principle. The Fourth Amendment does not forbid all searches, but it defines the limits and conditions of permissible searches; the compelled disclosure of private communications by electronic means ought equally to be subject to legal regulation. And if this principle is granted, I see no reasoned basis for reaching different results depending upon whether the conversation is with a private person, with a federal undercover agent …, or with an avowed federal agent, as here.

**Lopez**, 373 U.S. at 449–51 (J. Brennan, Dissenting) (citation omitted).

Extrapolating from Justice Brennan's dissenting thoughts in **Lopez**, I fear we have now reached the point, as Justice Brennan warned, where our

right to 'privacy,' arising from the Fourth Amendment and its analogue in Article I, Section 8, means no more than mere 'secrecy.' As we enter a world of exponentially proliferating technology, which further degrades any practical right to privacy, I believe it is time to reconsider the limited view of the privacy right that we have inherited from narrow majority of jurists living in the mid-20th century. Moreover, I believe the burden on the state to obtain a warrant in order to secure such evidence for use in court is a trivial price to pay to secure a more robust right to privacy.